21-997, Daum v. Delvin. Good morning, your honors, and may it please the court. My name is Adam Deming. I'm the firm of Proskauer Rose, appointed pro bono counsel for appellant Terry Daum. Mr. Daum's allegations of flagrant sexual abuse during the course of two Pat Frisks state a claim under well-established Eighth Amendment principles. Notwithstanding the procedural posture of the case  defendants asked for a number of inferences to be made in their favor and urged this court to conclude that this was a routine standard Pat Frisk. But the aggressive public groping of Mr. Daum's genitals several times, the forceful rubbing of his rectum, an attempt to jam fingers into his rectum in an aggressive manner represent a wide departure from a standard Pat Frisk search. Officer Stickney's alleged conduct evinces an intent to humiliate Mr. Daum, not an innocuous search for contraband. In light of the severity and lack of penological purpose for Officer Stickney's conduct, Mr. Daum has stated an Eighth Amendment claim for sexual abuse. To begin, Daum's allegations state an Eighth Amendment sexual abuse claim under both of the operative prongs. Mr. Daum's allegations were sufficiently serious because they were not just severe or repetitive, they were both. They were, again, not routine Pat Frisks. They involve groping, attempted penetration of Mr. Daum's rectum, all in flagrant violation of the operative Department of Corrections directives on Pat Frisk searches, which do entail some contact with the genitals, but do not entail repeated aggressive contact in the manner that Mr. Daum describes, especially in light of the fact that we need to draw all inferences in his favor at this stage in proceedings. So there were two incidents here, right? Two Pat Frisks. And the first one seems like it was incident to a, I mean, there was a clear penological purpose. He set off a metal detector. But the second one, I guess, is arguably retaliatory. But in terms of the repetition, are you talking about the two incidents making it repetitive or something different? Yes, Your Honor. So I would say that the two incidents make it repetitive. I would also say that with respect to the first search, while it was initiated for an appropriate penological purpose because he set off a metal detector, at the same time, the conduct described during the search far surpassed anything that an ordinary penologically justified Pat Frisk would entail, especially given the whole context that Mr. Daum describes. He describes the fact that this was a public search, the fact that he left. So the analysis is not just kind of in a vacuum. Is there a penological purpose for some kind of search? But was, as alleged, the specific search related to a valid penological purpose? Or how would you articulate the required connection between what's alleged as the conduct and whether it matches with the asserted penological purpose? Yes, Judge Nathan. So I would say that even when a search is initiated for a justifiable penological purpose, that that search still has to adhere to the purpose of conducting a search in the first place. A simple search for contraband in the course of a Pat Frisk. And again, there are Department of Corrections regulations as to what a Pat Frisk entails, and then also what other kinds of searches entail. So had Officer Stickney suspected that Mr. Daum was hiding contraband in his body cavity, there were several other means that he could have used to more appropriately search him. And instead, the described aggressive groping of Mr. Daum, the aggressive attempt to penetrate his rectum. Does that suggest that, let's say there is some occurrence that triggers a search of some kind, that an allegation that an alternative was available is sufficient to state the claim? Or do you need something more? No, Your Honor. I would say that we need something more, but it is another contextual factor that contributes to the ready inference here that there was no penological purpose for the search and the conduct during the search that Mr. Daum described. And I would also add to Judge Park's earlier point that the second search is also part of what makes this repetitive. And under the framework articulated in this court's precedence, the repetition or the fact that there was a second search does go to the overall severity. It's a sliding scale. And the fact that the second search was carried out for a retaliatory purpose further contributes to, again, the fact that the overall conduct here, there's simply no penological purpose for what Mr. Daum described in his complaint. But how could a third party determine whether there was a penological purpose for the search? Your Honor, I'd say all we have to go on is sort of the allegations and the inferences that we can draw from those. And given that that's What's the difference between a search that has a penological purpose and one that doesn't? I think that there is a broader context you can look at for whether or not a search was initiated for a penological purpose, and then whether or not that search continued to adhere to the purpose for it in the first place. Corrections officers believe that he might be secreting contraband, somebody told them. They're looking for contraband. What's acceptable and what's not? Your Honor, I would say that the searches that are acceptable are described in the Department of Corrections Directive, specifically Directive 4910, describes the various types of searches that are permissible and how they should be conducted. And here you have a departure, a far departure, from the Pat Frisk search that Directive 4910 permits Officer Stickney to conduct. I would also say that given the overall context that he alleges, the fact that both searches were conducted in front of other people, the first search in front of his fellow inmates and the second search in the company of many guards, that public nature evinces an intent to humiliate, as does the fact that there is alleged taunting. Again, less invasive means were available. And also, the fact that he alleges that the other inmates during the first search received searches that were far less aggressive, less extreme than the search that he received didn't involve nearly the same kind of thing. Do violations of those regulations you just adverted to then give rise to damage actions? I do not believe so, Your Honor, but they do shape the contours of what particular conduct is permissible here. And I think that goes to the inquiry of whether or not there was a proper penological purpose for the actual search that was conducted. I think that you can conceive of many fact patterns where a search may be justified. There are many contexts in which searches are permitted. But if that search then starts to stray into areas that are no longer penologically justified, if the search becomes abusive, certainly it must be that inmates can make a claim that they were sexually abused in the course of a search. The fact that a search was initiated for a proper penological purpose does not excuse all later conduct that occurs during that search. Could you address qualified immunity? This occurred under the, I guess we would use the body standard from the 90s and not the kind of increased or heightened Crawford standard. Is that right? Yes, Your Honor. So quickly on qualified immunity, I would say that, well, this court's general approach to qualified immunity that's raised for the first time on appeal is to defer that question for the district court. If this court does choose to address it, I would say the defendants here are not entitled to qualified immunity. I would agree, Your Honor, that the body standard applies. But I would also say that precedents from several circuits outside of this circuit make the law clearly established at the time that the alleged conduct in Mr. Dahm's case occurred. Yeah, I guess that's my difficulty, is your briefing makes it sound like actually the Crawford standard is applicable because it was foreshadowed by other out-of-circuit precedent. I'm not sure how we apply that. So, Your Honor, I would say that the Crawford standard is certainly applicable for the first prong of qualified immunity. But to the second prong on whether or not the law was clearly established, I think you have cases from out of circuit that are clearly establishing, that are foreshadowing the Crawford standard in a very concrete way. You have Washington versus Hively essentially articulating the same rule as Crawford. And Crawford cited that case when it came down, among other cases from the third, sixth, seventh, eighth, and ninth circuits that speak to. Not all of them speak to the particular conduct here, but all of them draw, I think, a general picture. And several of them do speak to the particular conduct here, especially those decided in 2012, right before the conduct here took place. But I understand now, you're saying that maybe you're, I don't know if it's your primary argument, but your first argument is that the district court should resolve qualified immunity on remand in the first instance. Yes, Your Honor. This court several times has reserved the question when it was raised for the first time on appeal. It did so in Crawford. It did so in Shannon versus Honitazi. And in various other cases, the court has observed that it is its general practice where this hasn't been raised for the first time at the district court to remand for consideration in the first instance at the district court level. When you say it wasn't raised, you mean it wasn't addressed by the district court, or it wasn't raised at all? It was not addressed by the district court. And with respect to these specific claims, it was not raised, only because they were dismissed at the screening stage, so the defendants didn't answer. So there was no answer. There was no answer, exactly, Your Honor. Thank you, counsel. Thank you. Good morning, Your Honor. Jeffrey Lange on behalf of Appalese. We would say two things. First, the sexual abuse alleged here doesn't satisfy the standard in Crawford, because the contact was incidental to a legitimate frisk and wasn't sufficiently objectively severe. But alternatively, the defendants here have qualified immunity. Wasn't it sufficiently objective? Subjectively severe. Well, because the contact was similar to the contact that was at issue in the Shavee Prindle case. So the plaintiff had actually set off the metal detector, so it was indisputably incidental to a packed frisk. So sort of same question. Yes, a search incidental to a metal detector going off is obviously fine for a shortcut. But at some point, the allegation of the nature of the search would mean that it is no longer valid to that penological purpose. You agree with that? Certainly. We just don't think it crossed the line here. In the Hayes case, this court said, I think very appropriately, packed frisks relate to the safety and security of the facility by ensuring that inmates do not possess contraband. And prison directors make clear that packed frisks necessarily entail contact with the genitalia and buttocks, where inmates have been known to conceal drugs and weapons such as razor blades. So I think, as alleged, this was indisputably an invasive and aggressive packed frisk. But that doesn't mean that it violates the Eighth Amendment. It was still a legitimate packed frisk. Packed frisks can be legitimately aggressive. And I would note that even in the second frisk, it was only alleged that that frisk was aggressive and that there was a swipe between his buttocks, which again, that's packed frisks, as this court recognized, can search him in that way. So the second frisk certainly didn't even meet the objective. The second one was not incident to a setting off a metal detector. It appeared to be alleged in the complaint to be retaliatory. There was a call from his brother, and then they called him in. And there were retaliation claims that were tried to a jury and that were rejected. It was still a legitimate packed frisk. I mean, he had been in the recreation yard. So this is a frisk that happens an hour and a half later. And after being in the recreation yard, he was called from his cell. And so it was plainly legitimate to conduct that search. And again, all that was alleged is that it was an aggressive. But it's not incident to the setting off the metal detector. It wasn't. That is true. But all that was alleged in that search is that it was an aggressive search. But I do want to emphasize that even if this court believes that. Can I just ask about that last one?  So the characterization of what happened in the search was different in the first and the second setting aside that set it off? The allegations as to what gave rise to the second search is that he was retrieved from his cell after he had been in the recreation yard for. So the second search happens like, I think, an hour and a half later. The groping and the attempt to penetrate, that's? The attempt to penetrate is he actually not just omits it, but he says the attempt at penetration, in fact, did not happen in the second search. He just alleges that it's an aggressive search. And so we would say that even objectively, that doesn't meet the standard. And that was the only search that Defendant Devlin was present for. So certainly, the claims against Devlin should be dismissed. But we would also argue, I do want to address qualified immunity, which is that this search occurred in 2014. And so the standard for whether the law was clearly established is the body standard from this court's decision in 1997. And I would say that in the Crawford 2 decision that we cite, this court dismissed the allegations in Crawford, which are indisputably worse than the allegations in this case, based on qualified immunity. Because the court said, well, that happened, that that act occurred. It was in 2011, and it occurred while the body standard was the governing standard. The facts in body are far worse than the facts here. And not only in Crawford 2, but also in Shannon v. Venitozzi 2, very similar, acts that are far worse than what happened here. There, it was alleged that the officer hit the plaintiff's genitals hard, rammed his hands into his testicles very hard, fondled his testicles. Worse than what we have here. And this court, again, in Shannon 2, said that qualified immunity applies. Now, what- Did you raise qualified immunity? We didn't, because what happened was- You did not? We did not, and that's because these claims were originally dismissed based on the screening decision before we had answered in the district court. But this is purely a legal question. So we're asking this court to reach qualified immunity, because there's no fact-finding. You just assume the truth of the allegations. And in the interest of judicial economy, we think this court can reach it just by assuming the truth of the allegations. It's undisputed, as my colleague said, that the body standard applied. This court has twice found that allegations of sexual abuse that are far worse than what are at issue here were subject to qualified immunity. So we think this court can reach that issue and should dismiss unqualified immunity. I wonder- Why is it that we have all the facts here to apply the body standard here and determine whether it's severe or repetitious? Because assuming the truth of the allegations, this conduct is far less worse than similar conduct in Crawford 2 and in Shannon 2, where this court already in those two decisions found qualified immunity. So all we're asking you to do is to assume the truth of the allegations. And they simply do not state a claim under the governing body standard. Because again, the conduct in body was far worse than the conduct here. It's not even close. The conduct in Shannon 2 was far worse than here and in Crawford 2 as well. I want to address that. So the way that plaintiff attempts to evade qualified immunity is to say that, well, there were some circuit, you know, a handful of circuit cases that clearly foreshadowed the law that even though this occurred before Crawford, they want to say that for three years in between 2011 and 2014, and this act occurred in April of 2014, that those cases make all of the difference. But in fact, those cases are all very fact-specific. Not only that, but they're distinguishable. And the conduct in those cases is worse. So I don't think you can say that these very fact-specific cases and these other circuits clearly foreshadowed the rule that this court articulated in Crawford in 2015. In fact, two of those decisions, the Eighth Circuit decision in Berry and the Third Circuit decision in Beers Capital, they occurred one in 1998 and the other in 2001. So they didn't even occur in 2012. And then the remaining decisions, you have two Seventh Circuit decisions in 2012 and one Ninth Circuit decision in 2012. And the two Sevenths- I want to make sure I understand that point about the temporal relation. The fact that the conduct occurred substantially before the cases would suggest that the officers who you think about when you're thinking about, well, were they on notice of the clearly established law? Of course, doesn't that just cut in the opposite direction? No, I actually maybe missed a point, which is that in Crawford II, this court said that the state of the law in 2011 was unsettled. And so, in 2011, this court said, in 2011, the out-of-circuit authority was sharply divided on whether abuse comparable to the defendant officer in Crawford constituted an Eighth Amendment violation. So looking at the state of the case law in 2011, in Crawford II that we cite, the decision that we cite in our brief, this court already said that the state of the law in 2011 was unsettled. And so, what they are trying to argue is, well, the acts here didn't occur in 2011, they occurred in 2014. And so, a handful of cases, some of which were in 2012, somehow clearly foreshadowed the law. These are decisions by other circuits, somehow clearly foreshadowed the law so that, in fact, the Crawford standard, we should have known that, you know, the defendants should have known that that would be the applicable standard. And all I'm saying is that's just not so. Why is this relevant if you agree, if both sides agree that body was the standard until Crawford? Well, I don't think it's relevant. I don't think it's a meritorious argument. I think that clearly the body standard applies. And so, this is a rebuttal argument. Clearly, the body standard applies. And none of those out-of-circuit cases suggest a standard that would be in any way more lenient, that they are too fact-specific than the level of objective seriousness. Can I ask you about that? Because you said that, you know, it's clearly worse, clearly worse, clearly worse. But I don't think either body or Crawford involved an allegation of an attempted penetration of the rectum. It involved more sort of, obviously, sexual conduct. But in terms of the severity, the severity of the conduct, why is it so clear it's worse? I'm sorry, why is it so clear that body and Crawford conduct is worse? Well, I mean, so. I guess, in what sense are you saying? You know, the officers are already permitted to search invasively between the buttocks. And, you know, there's no doubt that this felt, assuming the truth of the allegations, that this felt as if it were a very invasive search. You might have felt that that's what the plaintiff was, sorry, the defendant, the officer, Stickney, was attempting to do. But that's a conclusion. We take the allegations, right? Yes, assuming the truth of the allegations. Right, so held aggressively on the wall, groped his genitals several times, and then attempted to jam his fingertips into Down's rectum in an aggressive manner, and that he was, after he was emotionally shocked, humiliated, and physically violated. Well, I mean, again, the officers are allowed to search in between the buttocks, and they're allowed to do it in an invasive manner. And if you look at the, I mean, the allegations in body where it was a female officer. Are you saying they're allowed to penetrate his rectum? Not penetrate. It wasn't an actual, it was a through-the-clothes, what he felt like was an attempted penetration. That is his conclusory speculation about what the intent was. But the frisks. We don't, we accept the fact, we accept the truth of what he felt, but you want us to not allow the conclusion that what he felt is what occurred? Well, he doesn't even say that it was an actual penetration. We're just saying you can't infer that that's what he was trying to do. That an actual penetration wasn't alleged, and searches are allowed to be extremely invasive. And I think when you look at the search as a whole, I don't think that one allegation about an attempted penetration makes all the difference. I mean, so the search in Shannon Two, the officer hit the plaintiff's genitals hard, rammed his hands into his testicles hard, fondled his genitals, rubbed his buttocks, and all but admitted to a sexual assault. We have no- Right, so other than that all but admitted to a sexual assault, which is, I presume, a conclusory, you would say conclusory, but the factual allegations sound quite similar. So those are the allegations in Shannon Two. That wasn't conclusory at all. That was what the officer said, is if you don't want to be searched and sexually assaulted, stop coming into prison. That was the allegation in Shannon Two, where this court found qualified immunity. And so all I'm suggesting is that if you look in the allegations as a whole against my clients, the two defendants, and especially Stickney, they are not as severe as body, but they are certainly not as severe as the allegations in Shannon Two that I just read to you. Well, other than, so I hear you that the statement, which makes the clarity of the sexual assault as the intent of the officer clear. Not just the statement, but hitting the genitals hard, ramming his hands into his testicles. Okay, so hitting the genitals hard, groped down his genitals several times. Hit his genitals hard, rammed his hands into his testicles very hard, fondled his genitals. Utilized his hand to aggressively rub against Down's rectum several times. I'm just not, the clarity of the distinction of severity that you're suggesting is lost on me. Well, if, your honors, if you think that the conduct alleged here is as severe as body and in Crawford Two and in Shannon Two, then you can send this case back. But our argument is that if you look at the frisk as a whole that it's simply nowhere near as severe as the conduct alleged in body, the conduct alleged in Crawford, in which this court found qualified immunity in Crawford Two, and the conduct alleged in Shannon, where this court found qualified immunity in Shannon Two. And that's our argument. Unless the court has any further questions, we'll rest in our submissions and we would ask that the court affirm. Thank you. Thank you, your honors. Just a few quick points. First, opposing counsel relies heavily on Shaw versus Prindle. Actually, that case at the appellate level was decided on summary judgment. Initially, the district court taking allegations that were somewhat similar to those here at the motion to dismiss stage, held that they stated a claim for Eighth Amendment sexual abuse. It was only after evidence was adduced that the district court then concluded that, okay, this was a routine pat frisk. But that is not what the plaintiff alleged. And that was sufficient to state an Eighth Amendment claim, just like it is sufficient here. What additional fact finding do you need for qualified immunity purposes? Mr. Lange says that we have everything. It's just a question of applying it to the legal standards. Your honor, I would say that we don't necessarily need more fact finding. But the parties didn't even have a full chance to fully brief this issue. There are several points that I think on full briefing and before the district court, the district court could evaluate them, I think, fully in the first instance. And the parties could more appropriately fully develop their arguments. The second point I'd like to make is that, repeatedly, as Judge Nathan points out, opposing counsel characterizes the allegations here as less severe than several other cases. And in doing so, they implicitly ask for inferences to be drawn in their favor. In Bodie, you have, I think, a pattern of sexual harassment that, while reprehensible, again, doesn't feature several of the same egregious facts here. And then, with respect to Crawford, I say, well, the allegations are similar there. You had single instances of abusive pat frisk search. Here, you have two instances perpetrated against the same plaintiff of similarly abusive pat frisk search carried out within two hours of one another. The second one, plainly retaliatory for complaining about the first. And then the third point I would just quickly make is. What about the fact that the retaliation claim went to trial and the jury found against your client? Is that pertinent to the question of whether, at this stage, whether it was retaliatory? Or do we still accept as true that it was retaliatory? Your Honor, we accept it as true that it's retaliatory because I think that the inquiry here is whether or not it served a penological purpose. This isn't Mr. Dahm's First Amendment retaliation claims. Those were evaluated by a jury. But here, the claims that he makes about the sexual abuse perpetrated in violation of his Eighth Amendment rights, they specifically pose the inquiry of whether or not there was a proper penological purpose. And there was none for the second search. Instead, it was clearly carried out as a clear reaction to him submitting a complaint. Your Honor, if there are no further questions, we would ask that this court reverse your amendment. Thank you, counsel. Thank you both. Thank you both. We'll take the case under advisory.